684 So.2d 554 (1996)
STATE of Louisiana
v.
Gershone P. JOHNSON.
Nos. 95-KA-2626, 95-KA-2801.
Court of Appeal of Louisiana, Fourth Circuit.
November 27, 1996.
Harry F. Connick, District Attorney, Parish of Orleans, Glynn E. Alexander, Assistant District Attorney, Parish of Orleans and Lara Burns, Law Clerk, New Orleans, for Appellant.
Kevin V. Boshea, Regan, Manasseh & Boshea, New Orleans, for Defendant.
Before CIACCIO, ARMSTRONG and LANDRIEU, JJ.
LANDRIEU, Judge.
On May 20, 1994, the State charged Gershone Johnson by bill of information with possession of 28 grams or more but less than 200 grams of cocaine, La.Rev.Stat. Ann. § 40:967 (West 1992 & Supp.1996), and with illegal use of a weapon, La.Rev.Stat. Ann. § 14:94(E) (West Supp.1996). Johnson pleaded not guilty. Trial commenced on August *555 17, 1995 as to count two only (cocaine possession). On the second day of trial, near the close of the State's case, Johnson requested a mistrial, which the trial court granted. Subsequently, Johnson filed a motion to quash count two of the bill of information, and on September 15, 1995, after conducting a contradictory hearing on the motion, the trial court granted the motion. The State now appeals the trial court's judgment.
On March 21, 1994, the New Orleans Police Department executed a search warrant at 7252 Bunker Hill. Upon approaching the residence, the officers saw Johnson and Troy Golden. The officers recognized Johnson as a wanted subject and immediately arrested him. The officers entered the home, conducted the search, and confiscated a safe. Being unable to open the safe, the officers took it to a locksmith to be opened. In the safe, the officers found 158 grams of cocaine, money, watches, a gun holster, identification cards, and other miscellaneous papers. Johnson subsequently wrote a statement in front of the arresting officers that he was the owner of the safe.
At the close of the State's case, the prosecutor called Golden as a witness and asked him whether he and Johnson were in the drug business together. During the direct examination, the prosecutor asked Mr. Golden if Johnson had a conviction for drugs. At that point Johnson's counsel moved for a mistrial based upon prosecutorial misconduct. The trial court granted the motion and dismissed the jury.
At the hearing on the motion to quash, Johnson argued that the State should be precluded from retrying him on count two because of prosecutorial misconduct. Alleging that the State forced the mistrial, Johnson contended that the State is precluded under the double jeopardy clause from bringing him to trial again on count two.
The State contends that it did not intend to provoke a mistrial and that the trial court erred in granting the motion to quash count two. The State argues that the prosecutor merely erred when questioning a hostile witness, attempting to attack the witness's credibility by showing that he was untruthful, biased, and incompetent. Explaining that the prosecutor was questioning the witness regarding his bias toward Johnson and his knowledge of Johnson's reputation, the State admits that the prosecutor went beyond the scope of questioning a witness in an attempt to impeach, but asserts that the prosecutor's question was an inadvertent slip during the heat of battle and not an intentional attempt to provoke a mistrial.
At trial, the following colloquy occurred between the prosecutor and Mr. Golden:
DIRECT EXAMINATION
BY MR. ALEXANDER:
Q. What's your name?
A. Troy Golden.
Q. And Mr. Golden, you know Gershone Johnson, also known as Shawn Johnson?
A. Yes, he is.
* * *
Q. And what's your relationship to Mr. Johnson?
A. That's my nephew.
* * *
Q. Now you got arrested for drugs, right?
A. Yes, sir.
Q. On the 21st of March 1994?
A. Yes, sir.
* * *
Q. This safe, you and Gershone was in the drug business together, weren't you?
A. No, we wasn't.
Q. You all weren't in the drug business together?
A. No, we wasn't.
* * *
Q. All right. And it's your testimony today that your little nephew and you were not in the drug business together?
A. No, we were not.

*556 * * *
Q. You were in the drug business?
A. Yes, I was.
Q. Gershone don't know nothing about drugs?
A. No, he do not.
Q. And you're positive about that?
A. I'm positive.
Q. You're sure?
A. I'm sure. Just the wrong place at the wrong time.
* * *
Q. Oh, Gershone's a good boy?
BY MR. BOSHEA:
Objection, your Honor. This line of questioning is way out of line.
BY THE COURT:
The objection is sustained.
BY MR. ALEXANDER:
Q. Gershone Johnson has a conviction for drugs.
A. And he was also in the car with four other men.
Q. Well
A. Three other men, I'm sorry.
Q. All right, you knew he was in the car with four other men?
La.Code Crim. Proc. Ann. art. 770 (West 1981) provides in part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * *
The prosecutor's comment clearly falls within the prohibited acts described in Article 770. Therefore, the trial court correctly granted the mistrial.
The question then becomes whether the prosecutor's comments were intended to force a mistrial, and, therefore, a retrial of Johnson would be in violation of the double jeopardy clause.
In Oregon v. Kennedy, 456 U.S. 667, 674-76, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982) the Court explained that the intent of the prosecutor must be examined to determine whether the double jeopardy clause has been violated because of prosecutorial misconduct:
Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact" United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." United States v. Dinitz, supra, 424 U.S., at 609, 96 S.Ct., at 1080. Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeed in aborting the first on his own motion. [Emphasis added].
The Court further explained:
... we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.
Id. at 679, 102 S.Ct. at 2091.
The Court in Kennedy gave deference to the trial court's findings that the prosecutorial *557 conduct culminating in the termination of the defendant's first trial was not so intended by the prosecutor and elected not to disturb the ruling of the trial court. Id. at 678-79, 102 S.Ct. at 2091.
In this case, the prosecutor claims that his comment was inadvertent; his remark, however, was not an isolated reference to Johnson's criminal history. Also, the prosecutor rationalized his line of questioning immediately after the incident:
BY MR. ALEXANDER:
Yes, Judge. With all due respect, this witness was called by the state to show that there was interest and bias on the part of this witness testifying. It came to my knowledge on yesterday evening ... that he pled guilty and received six years for possession of 28 grams but less than 200. And I called him in our case in chief as a hostile witness. It was established that hethat he was involved in the drug business. And when I posed the question to him about Gershone knowing anything about drugs, he said Gershone knew nothing about drugs. And then he said he was at the wrong place at the wrong time.
* * *
My position then was that if he knew nothing about drugs, then was he aware that he was arrested and he said, "Yeah, he was arrested with three other people." And I said that he was convicted. And he said he was arrested with three other people.
BY THE COURT:
The question was: Were you aware that he had a conviction for drugs?
BY MR. ALEXANDER:
Yes, Judge.
BY THE COURT:
And he said yes.
BY MR. ALEXANDER:
Yes, Judge.
At the motion to quash hearing the trial court made the following findings:
The Court is of the opinion that the State through its questioning forced the defendant to ask for a mistrial, and that no mistrial would have been requested had it not been for this gross and egregious violation of the law in regards to the State pointing out to the jury that the defendant had a prior conviction for narcotics.
The Court is of the opinion that the defendant was forced to move for the mistrial and had no alternative to do so and would not have done so had it not been for the violation by the State. It is therefore concluded that the State should be barred from re-trying the defendant on the grounds of double jeopardy as to Count Number 2. Consequently the motion to quash as to Count Number 2 on the grounds of double jeopardy is granted.
The trial judge did make a factual finding that the prosecutor's conduct was intentional and not an inadvertent error. We cannot say he abused his discretion.
Accordingly, the trial court's judgment granting Johnson's motion to quash is affirmed. The case is remanded to the trial court for further proceedings.
AFFIRMED; REMANDED.