721 So.2d 78 (1998)
STATE of Louisiana
v.
Danny V. CAUSEY.
No. 96-KA-2723.
Court of Appeal of Louisiana, Fourth Circuit.
October 21, 1998.
*80 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Defendant/Appellant Danny Causey.
Harry F. Connick, District Attorney, Joseph E. Lucore, Assistant District Attorney of Orleans Parish, New Orleans, for the Appellee The State of Louisiana.
Before Chief Judge PATRICK M. SCHOTT, Judge WILLIAM H. BYRNES, III and Judge PATRICIA RIVET MURRAY.
MURRAY, J.
Danny Causey was convicted of first degree murder for the shooting death of Tyronne Willis in an incident in which two other individuals were shot. The jury deadlocked on the penalty to be imposed, resulting in a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence.
Mr. Causey now appeals his conviction, asserting errors in a pro se brief as well as through appellate counsel. We affirm.

STATEMENT OF THE FACTS
Testimony presented by the State established that on April 18, 1995, Anthony Scott, Juan Brass, and Tyronne Willis were drinking daiquiris and "hanging out" in front of a friend's home in New Orleans during the early evening hours. At about 8:30 p.m., the defendant, Danny Causey, walked up and spoke briefly with Mr. Scott, asking for a ride to his aunt's house a few blocks away. Mr. Scott agreed, and asked the other two men if they wanted to go along. All four then got into Mr. Scott's 1984 Oldsmobile: Mr. Scott in the driver's seat, Mr. Brass in the front passenger seat, Mr. Causey in the left rear seat (behind Mr. Scott), and Mr. Willis in the right rear seat (behind Mr. Brass).
According to Mr. Scott and Mr. Brass, the car radio was playing and no one spoke during the six-to-eight-block ride to their destination. Mr. Scott testified that as he slowed to stop in front of DeeDee Causey's house, he suddenly heard two or three rapid gunshots. He saw Mr. Brass lean over somewhat, so Mr. Scott turned toward the backseat, unsure of what was happening. Mr. Causey pointed a pistol at his head and told him to turn around and keep driving. At that moment, however, the defendant was distracted when Mr. Brass opened the right car door to escape, so Mr. Scott also jumped from the moving car. Mr. Causey fired the gun again, hitting Mr. Scott in the shoulder. Despite his wound, Mr. Scott was able to run away as the defendant got into the driver's seat and took off in the car.
*81 Mr. Brass generally corroborated Mr. Scott's description of these events, but he specifically recalled that Mr. Causey said "Pull over, this is the house," before Mr. Scott began to slow the car. Three gunshots rang out, and Mr. Brass felt two hits in his upper back. He slumped over and played dead so that Mr. Causey would stop shooting. When the defendant turned his attention to Mr. Scott, Mr. Brass opened the car door and fell into the street. He heard one more gunshot as he got up and ran a short distance before collapsing in a front yard. While lying on the ground, Mr. Brass saw Mr. Scott's car circle past him once or twice, then disappear.
Mr. Scott and Mr. Brass were taken to Charity Hospital for treatment, followed by police questioning. Because Mr. Scott had known Mr. Causey and his family for years, he immediately named the defendant as his assailant and identified him from a photo lineup. However, while Mr. Brass knew some of Mr. Causey's family members, he had seen the defendant only once or twice. Therefore, when he was shown an array of six photos, he selected three pictures, including that of Mr. Causey, as the shooter. At trial, Mr. Brass explained that he had had difficulty only because Mr. Causey's complexion looked different in the photograph; he was now "one hundred percent" certain of his identification.
Mr. Willis' body was found later that same night in Mr. Scott's car, which had been abandoned near the Industrial Canal. The coroner testified that Mr. Willis died from a single gunshot into the left ear, fired from four to six inches away. The State provided additional expert testimony to establish that no identifiable fingerprints were found in or on Mr. Scott's car, and no guns, bullets or spent casings were recovered for analysis.
Mr. Causey testified that he acted in self defense, shooting the three men only after it became clear that they intended to kill him. According to the defendant, he had previously agreed to sell an ounce of cocaine for Mr. Scott for $2,400.00, of which he was to keep $1,200.00. On the day of the shooting, Mr. Causey told Mr. Scott in a phone conversation that he had only $600.00 for him because the cocaine was of such poor quality that it did not sell for "full price." Mr. Causey was instructed to meet Mr. Scott in person, so he took a cab to the specified location. He "knew something was going to happen" when he saw that Mr. Scott had two other men there, but he nevertheless obeyed when told to get into the backseat of Mr. Scott's car with Mr. Willis. While walking around the front of the Oldsmobile, Mr. Causey saw Mr. Brass pull a gun from his waistband and place it on the middle of the front seat. The car pulled off to an unknown destination, with the radio masking a brief conversation between Mr. Scott and Mr. Brass.
Shortly after the ride began, Mr. Scott and his friends began berating Mr. Causey for coming up short on the money he owed for the cocaine. Mr. Willis appeared somewhat drunk and "hyper," raising his shirt several times as he talked and revealing a gun tucked into the waistband of his pants. As the car entered a very dark street, Mr. Scott slowed down, lowered the volume on the radio, and began looking frequently into the rearview mirror at Mr. Willis. Mr. Causey noticed these signals and saw that Mr. Willis was reaching for the gun tucked into his pants. However, the defendant moved more quickly and was able to shoot Mr. Willis first. Both men in the front seat fumbled briefly for the gun that was between them; Mr. Brass was shot as soon as Mr. Causey saw the gun in his grasp. Mr. Brass jumped from the car, leaving his gun on the front passenger seat close to the door. Mr. Scott was still reaching for that gun, so Mr. Causey fired in that direction, chasing Mr. Scott from the car. Within moments after the first shot had been fired, Mr. Causey found himself jumping into the driver's seat and speeding away, with no awareness of where he was or where he was going. When he stopped the car on France Road, Mr. Causey heard Mr. Willis moaning from the back seat, so he grabbed all three guns and left in a cab. He testified that he threw the guns into the bayou because he was afraid.
The defendant's uncle, Tyronne Causey, testified that he was involved in narcotics dealings with Mr. Scott and Mr. Brass from 1989 through 1995. When asked about specific *82 deals, however, he invoked his Fifth Amendment privilege. Mr. Causey's mother testified that on the day before the shooting she saw Mr. Scott give her neighbor crack cocaine in exchange for a clothes dryer. Evidence established that Mr. Scott had been convicted of theft in 1988, and had two convictions for possession of cocaine in 1989 and 1991. He completed his parole on the latter charge in March 1996. Mr. Brass admitted a 1991 conviction for carrying a concealed weapon.

ARGUMENTS AND DISCUSSION

Bill of Indictment
In a pro se assignment of error, Mr. Causey argues that he was charged by an invalid indictment because it failed to state the essential elements constituting the offense charged. He specifically contends that the indictment was insufficient to enable him to prepare a proper defense to the State's theory that the killing occurred in the course of an armed robbery.
Mr. Causey was charged by an indictment which reads, in pertinent part:
That one DANNY CAUSEY ... on the 19th day of April in the year of our Lord, one thousand, nine hundred ninety-five in the Parish of Orleans aforesaid ... committed FIRST DEGREE MURDER of TYRONNE WILLIS where said DANNY CAUSEY had the specific intent to kill or inflict great bodily harm to more than one person....
This language satisfies both constitutional and statutory requirements for putting the defendant on notice of the crime for which he was charged, first degree murder. La.Code Crim. Proc. Ann. art. 465 A(31); State v. Bourque, 622 So.2d 198, 219 (La.1993), overruled on other grounds in State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16. Furthermore, the defense was given notice of the additional aggravating circumstance alleged, felony murder, through written answers to Mr. Causey's motions for a bill of particulars and at two pretrial hearings on the issue. Thus, the indictment was sufficient, with the bill of particulars, to inform Mr. Causey that the State intended to argue at trial that the shootings occurred during an armed robbery or attempted armed robbery. See Bourque, 622 So.2d at 219. Accordingly, this assignment of error is without merit.

Jury Selection
In the first error assigned by counsel, Mr. Causey asserts that he has been denied the right of appeal based on a full record because the trial transcript does not indicate the particular jurors that were subject to defense counsel's objections at voir dire.
The record provided to this court contains a complete transcript of the voir dire as well as a list of all potential jurors, annotated to indicate who was excused for cause and who was excused through each side's use of peremptory challenges. After the jury had been impanelled, defense counsel noted his objection to some of the State's dismissals for cause "that I mentioned up at the bench." Unfortunately, these bench conferences had not been recorded. Mr. Causey's appellate counsel contends, therefore, that neither he nor this court can determine which State challenges were improperly granted and which defense challenges were improperly denied, thus requiring a new trial.
A complete record on appeal refers only to evidentiary portions of the transcript unless objections are noted during other segments of the proceedings. State v. Thomas, 92-1428, p. 2 (La.App. 4th Cir. 5/26/94), 637 So.2d 1272, 1274, writ denied, 94-1725 (La.11/18/94), 646 So.2d 376, cert. denied, 514 U.S. 1054, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995). Reversal is not warranted by the failure to transcribe voir dire unless the defendant demonstrates that he has been prejudiced thereby. State v. Allen, 95-1754, p. 11 (La.9/5/96), 682 So.2d 713, 722. In this case, appellate counsel could compare the list of jurors excused for cause with the voir dire transcript to determine if any jurors were removed for cause without sufficient reason.[1] Therefore, Mr. Causey has not been prejudiced *83 by the lack of specific, transcribed objections to the State's challenges for cause.
Similarly, we find no merit to the assertion that the record regarding defense counsel's challenges for cause is insufficient for appellate review. The trial transcript establishes that Mr. Causey's attorney specifically noted his objection to the court's denial of his forcause challenges to jurors two, five and seven of the first round, and no others. Therefore, we reject the contention that an incomplete record entitles Mr. Causey to a new trial.
In his second assignment of error, appellate counsel argues that the trial court improperly denied two of the defendant's challenges for cause, forcing him to exhaust his peremptory challenges. Both of the jurors at issue expressed difficulty with considering youth and voluntary intoxication as mitigating factors in the penalty phase. Mr. Causey contends that they were insufficiently rehabilitated for use on the panel, thus requiring reversal of his conviction under State v. Ross, 623 So.2d 643 (La.1993).
A potential juror should be dismissed for cause when examination reveals an inability to be impartial or to apply the law as given by the court. La.Code Crim. Proc. Ann. art. 797. However, a trial court is vested with broad discretion in ruling on such challenges. State v. Connolly, 96-1680, p. 6 (La.7/1/97), 700 So.2d 810, 815. Furthermore, reversal is required only if (1) review of the entire voir dire reveals an abuse of discretion resulted in an erroneous denial of a defense challenge, and (2) all of the defendant's peremptory challenges were exhausted. Id., pp. 6-7, 700 So.2d at 816. Because the latter requirement is met here, we must determine if either or both of the jurors at issue should have been dismissed for cause.
The voir dire transcript reveals that both jurors initially stated that neither youth nor intoxication should excuse a murder. However, when asked if that meant a guilty verdict would "automatically" result in a death sentence in this case, both replied in the negative. Furthermore, when given the chance to elaborate, each ultimately averred that a decision on the penalty to be imposed would "depend on all of the circumstances," including these two factors, if the law required it. Thus, although some of the responses by the challenged jurors were questionable when viewed standing alone, we are satisfied that both demonstrated their willingness and ability to decide the case impartially and to consider any relevant mitigating circumstances, as instructed. Accordingly, we find no abuse of discretion in the trial court's denial of these challenges for cause.

Sufficiency of the Evidence
In his second pro se assignment of error, Mr. Causey contends the State improperly used perjured testimony to indict and convict him for first degree murder. Review of his arguments suggests that he is actually claiming insufficiency of the evidence, both because there was no testimony to establish a robbery attempt, and because the eyewitness testimony contradicting his claim of self defense was not worthy of belief.
The standard for appellate review of a claim of insufficient evidence is firmly established in Louisiana law:
An appellate court reviewing a claim of insufficient evidence must determine that the trial evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. The elements must be sufficient that every reasonable hypothesis of innocence is excluded .... If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be upheld. However, if the appellate court finds that no rational trier of fact, viewing all the evidence from a pro-prosecution standpoint, could have found guilt beyond a reasonable doubt, the conviction cannot constitutionally stand.
State v. Hawkins, 96-0766, p. 7 (La.1/14/97), 688 So.2d 473, 479 (citations omitted). In reviewing the record to determine sufficiency of the evidence, a jury's credibility decisions should not be disturbed unless clearly contrary to the evidence. State v. Harris, 624 *84 So.2d 443, 447 (La.App. 4th Cir.1993), writ denied, 93-2609 (La.6/24/94), 640 So.2d 1339.
La. R.S. § 14:30 A defines first degree murder as "the killing of a human being.... [w]hen the offender has a specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery.... [or][w]hen the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." Specific intent, whether proven by direct or circumstantial evidence, is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. § 14:10(1). When the accused claims he acted in self defense, the State must prove beyond a reasonable doubt that the homicide was not justifiable under La. R.S. § 14:20. State v. Williams, 96-1587, p. 10 (La.App. 4th Cir. 4/19/97), 693 So.2d 249, 255, writ denied, 97-2513 (La.4/9/98), 717 So.2d 1138.
The defendant first contends that because Mr. Scott and Mr. Brass denied that there was any indication Mr. Causey intended to rob them, the State did not prove the aggravating circumstance of felony murder. However, this argument ignores the original basis for the first-degree indictment, that he acted with the specific intent to kill more than one person. The jury's determination that this aggravating circumstance was proven is supported by Mr. Causey's act of firing his gun at three individuals. See State v. Seals, 95-0305, p. 6 (La.11/25/96), 684 So.2d 368, 373, cert.denied, ___ U.S. ___, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
Mr. Causey next asserts that because the two eyewitnesses, Mr. Scott and Mr. Brass, were convicted felons and their testimony was not entirely consistent, the evidence was insufficient to establish beyond a reasonable doubt that his version of events, and thus his claim of self defense, was not the truth. However, the jury was made aware of the witnesses' backgrounds, and was correctly instructed regarding their assessments of credibility and the weighing of testimonial evidence. Although there were minor discrepancies in the description of events provided by the prosecution witnesses, it cannot be said that their testimony was contrary to the evidence. Accordingly, the jury's decision to credit the testimony by Mr. Scott and Mr. Brass over that of Mr. Causey cannot be overturned. We thus find the proof sufficient to convince a rational factfinder, beyond a reasonable doubt, that Mr. Causey was guilty of first degree murder and not a justifiable homicide.

Ineffective Assistance of counsel
In his final pro se assignment of error, Mr. Causey asserts that his trial attorney's failure to cross examine Mr. Scott and Mr. Brass about discrepancies in their prior statements to police constituted ineffective assistance of counsel, entitling him to a new trial.
Although a claim of ineffective assistance of counsel is normally raised in an application for post-conviction relief, this court may address the merits of the claim when the record on appeal is sufficient. State v. Seiss, 428 So.2d 444 (La.1983); State v. Lavigne, 95-0204 (La.App. 4th Cir. 5/22/96), 675 So.2d 771, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140. Such a claim is assessed by the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Brooks, 94-2438 (La.10/16/95), 661 So.2d 1333 (on rehearing). In order to prevail, the defendant must not only show that counsel's performance was deficient, but also that he was prejudiced by the deficiency. Brooks at p. 6, 661 So.2d at 1337. The defendant must prove both elements to establish that his attorney was so ineffective as to require reversal. State v. Hongo, 96-2060, p. 5 (La.12/2/97), 706 So.2d 419, 422. Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland at 686, 104 S.Ct. at 2064. To carry this burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine *85 confidence in the outcome." Id. at 693, 104 S.Ct. at 2068.
In this case, Mr. Causey claims that Mr. Scott initially told the police that Mr. Brass, rather than Mr. Willis, was in the front passenger seat of his car. He further notes that, according to a police report that is not in the record, the two witnesses differed in the number of shots they heard. Mr. Causey contends that these discrepancies should have been brought out in cross examination, thus destroying their credibility with the jury.
The record in this case is sufficient to determine that Mr. Causey's claim of ineffective assistance of counsel is without merit. The asserted discrepancies could easily have been explained, and were not of a nature that would cast significant doubt on the credibility of the witnesses. Mr. Causey's own testimony corroborated the seating arrangements in the car, and he admitted shooting at each of the other individuals in the car. When the testimony and evidence is taken as a whole, we cannot find that there is a reasonable probability of a different outcome if Mr. Scott and Mr. Brass had been questioned at trial about the purported inconsistencies.
A review of the record for errors patent indicates that there were none.

CONCLUSION
For the reasons assigned, Mr. Causey's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] This court conducted such a comparison and found that virtually all of the potential jurors dismissed for cause had expressed a firm opposition to capital punishment.