947 So.2d 115 (2006)
STATE of Louisiana
v.
Riynell JACKSON.
No. 2005-KA-1281.
Court of Appeal of Louisiana, Fourth Circuit.
November 29, 2006.
Rehearing Denied January 31, 2007.
*117 Eddie J. Jordan, Jr., District Attorney, Battle Bell, IV, Assistant District Attorney, Kimya M. Holmes, Assistant District Attorney, State of Louisiana, New Orleans, LA, for State of Louisiana.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Riynell Jackson.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, SR., Judge LEON A. CANNIZZARO, JR.).
PATRICIA RIVET MURRAY, Judge.
In this criminal case, both the defendant, Riynell Jackson, and the State appeal. The principal issue Mr. Jackson raises is whether the trial court abused its discretion in denying his motion to quash. Finding no error, we affirm his conviction. The sole issue the State raises is whether the trial court erred in dismissing its multiple bill on the court's own motion. Finding error, we vacate the trial court's dismissal of the multiple bill and remand for further proceedings on the multiple bill.

STATEMENT OF THE CASE
On August 6, 2003, Mr. Jackson was charged with one count of possession with the intent to distribute heroin. At his arraignment on August 19, 2003, Mr. Jackson pled not guilty. On September 17, 2003, the trial court heard and denied his motions to suppress evidence and statement. Mr. Jackson's case was reset for trial several times. On November 10, 2004, Mr. Jackson's first trial ended in a mistrial. The trial court thereafter reopened the motion to suppress. On December 9, 2004, the trial court denied the motion. On February 15, 2005, Mr. Jackson's counsel filed a motion to quash the indictment. On February 17, 2005, the trial court denied the motion.[1] On March 28, 2005, the trial court denied Mr. Jackson's pro se motion to quash,[2] but ruled that the statements that were the subject of the December 9, 2004 ruling were inadmissible.[3] On March 31, 2005, at the conclusion of a two-day trial, a twelve-person jury found Mr. Jackson guilty as charged. *118 On April 4, 2005, Mr. Jackson filed motions to reconsider sentence, to quash the multiple bill, and for appeal. On April 12, 2005, the trial court sentenced Mr. Jackson to serve twenty years at hard labor without benefit of parole, probation, or suspension of sentence. The trial court dismissed the State's multiple bill, and granted the State's and Mr. Jackson's appeal.

STATEMENT OF THE FACTS
On the morning of July 16, 2003, Officers Jason Giroir and Gus James of the New Orleans Police Department ("NOPD") were on proactive patrol in the area around Tulane Avenue. While on patrol, the officers observed a car traveling down Tulane Avenue that had an expired brake tag. Based on the traffic violation (the expired brake tag), the officers conducted a traffic stop. The three occupants in the car were Tamika January, the driver; Mr. Jackson, the front seat passenger; and Ms. January's three-year old child, the rear seat passenger. The officers approached the car and ordered the front-seat passengers out of the car. Complying with the officers request, Ms. January and Mr. Jackson exited and walked to the back of the car. The officers allowed Ms. January's toddler to remain inside the car. Although the officers requested that Ms. January produce her driver's license, car registration, and proof of insurance, she was only able to produce a current identification card.
Officer Giroir returned to the police car to run Ms. January's and Mr. Jackson's names through the computer. He learned that Ms. January's driver's license was suspended. Meanwhile, Officer James walked over to the passenger door of the car, which Mr. Jackson had left open. Inside the car Officer James spotted a clear plastic bag containing rice and eleven tinfoil packets. The bag was lying on the front passenger seat next to the center console. Believing the tinfoil packets in the bag contained drugs, Officer James seized the bag. He then indicated to Officer Giroir, who had just exited the police car, that he had found drugs. The officers handcuffed Mr. Jackson and Ms. January and advised them that they were under investigation.
While Officer Giroir was advising Mr. Jackson and Ms. January of their Miranda rights, Mr. Jackson spontaneously stated: "The dope is mine. I don't use it. I just sell it." The officers then arrested Mr. Jackson and searched him, but found no drugs on his person. A canine search was conducted, but no further drugs were found.
After the officers finished advising him of his rights, Mr. Jackson signed a waiver of rights of arrestee form. On the bottom of the form, Mr. Jackson handwrote the following: "Yes. It's my drugs."
At trial, the parties stipulated that the substance found in the tinfoil packets tested positive for heroin and weighed 13.1 grams.

DISCUSSION
A. Errors Patent
A review of the record indicates one patent error. Mr. Jackson was convicted of possession with the intent to distribute heroin. The sentence for this crime must be imposed without benefit of probation or suspension of sentence; however, parole eligibility is not prohibited. La. R.S. 40:966 B(1). The sentencing minute entry indicates that the trial court imposed Mr. Jackson's sentence without benefit of parole, probation, or suspension *119 of sentence.[4] Because the sentence as imposed is illegally excessive, we amend the sentence to delete the prohibition of parole eligibility. There are no other patent errors.
B. Assignment of Error by the State of Louisiana
The State's sole assignment of error is that the trial court erred by dismissing the multiple bill on its own motion. Although the multiple bill is not included in the record on appeal, the transcript of sentencing indicates that the bill charged Mr. Jackson with having three prior convictions: a 1995 manslaughter guilty plea, a 1995 armed robbery guilty plea, and a 1993 possession of cocaine guilty plea. Under La. R.S. 15:529.1 A(1)(c)(ii), if the State proves the allegations in the bill, the trial court will be required to impose a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. On its own motion, the trial court found that because Mr. Jackson was exposed to a mandatory life sentence, the State needed to bring an indictment against him and thus dismissed the multiple bill.[5] Citing State v. Smith, XXXX-XXXX, p. 3 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, 838, the State argues that the trial court erred by holding that it needed to bring an indictment. We agree.
In Smith, we addressed a similar issue. Citing La. Const. Art. 1, § 15 and La. C.Cr.P. art. 382, the defendant in Smith argued that the State was required to seek a grand jury indictment on the issue of the multiple bill because he was subject to being sentenced to life imprisonment as a quadruple offender under the bill. We held that the cited provisions apply "only to substantive offenses, not to multiple bill proceedings." Smith, XXXX-XXXX at p. 3, 913 So.2d at 838 (citing State v. Jolla, 337 So.2d 197 (La.1976); State v. Alexander, 325 So.2d 777 (La.1976); and State v. Delandro, 2001-2514 (La.App. 2 Cir. 5/10/02), 818 So.2d 1011). In Jolla, cited in Smith, the Louisiana Supreme Court held that "[m]ultiple billing need not be by grand jury indictment in cases involving possible life sentences." 337 So.2d at 201.
In this case, the allegations in the multiple bill are not substantive charges; rather, they are prior convictions that are being used to enhance Mr. Jackson's sentence. Although under the multiple bill Mr. Jackson is exposed to a life sentence, the State could bring these charges by a bill of information. We thus vacate the trial court's dismissal of the multiple bill and remand the case for further proceedings on the multiple bill.
C. Counseled Assignment of Error
Defense counsel's sole assignment of error is that the trial court erred in denying the motion to quash the charge against Mr. Jackson because of prosecutorial misconduct. To place this issue in context requires we first review the circumstances that lead to the mistrial.
At the first trial, Officer Giroir, one of the arresting officers, was the State's first witness. On direct examination, the Assistant District Attorney ("ADA") asked Officer Giroir whether Mr. Jackson at any point made any statements to him besides *120 the statement that he made while his Miranda rights were being read to him ("The dope is mine. I don't use it. I just sell it.") and the statement he noted on the waiver of rights of arrestee form that he signed ("Yes. It's my drugs.") In response, Officer Giroir testified:
"Mr. Jackson, the whole time we were on the scene, the whole time en route to the station, and while we were at the station, I remember him mumbling, talking to himself, saying that `life is hard. We don't understand. This is something he has to do for money, because life is hard, and the streets of New Orleans are tough. And that's the only way to make ends meet.'"
The State did not give any pretrial notice that Mr. Jackson made the later statements, nor was there any reference in the police report to the later statements. At the 2003 suppression hearing, Officer Giroir did not testify; rather, only Officer James testified. The only statement to which Officer James referred at that hearing was Mr. Jackson's initial statement that the drugs were his and that he sold, but did not use, drugs. It was not until Officer Giroir's testimony at the first trialconducted by a different ADA than the one who covered the 2003 suppression hearingthat the defense became aware of the later statements. In response, defense counsel moved for a mistrial, which the trial court granted.
After the first trial, the trial court held suppression hearings regarding Officer Giroir's testimony that Mr. Jackson made the later statements. Although Officer Giroir maintained that he heard Mr. Jackson make the later statements, Officer James at a separate hearing denied hearing Mr. Jackson make any such statements. The court initially refused to suppress the later statements.
Defense counsel then filed a motion to quash the bill of information. Counsel argued that the ADA intentionally asked Officer Giroir about the later statements (for which the State provided no prior notice) in order to provoke a mistrial. Denying the motion, the trial court reasoned that the State reaped no benefit by introducing Mr. Jackson's later statements. The court reasoned that the later statements were similar to the initial statement Mr. Jackson made while his Miranda rights were being read to him.
Thereafter, Mr. Jackson filed a similar pro se motion to quash the indictment. Mr. Jackson contended that the State sought to provoke the mistrial because the jury empaneled at the first trial was unfavorable to the State. In addressing the motion, Mr. Jackson requested that the court review the voir dire transcript from the first trial. The court denied both the request to review the transcript and the motion to quash, stating:
"I just don't see any connection between jury selection in this case and the subsequent questions by the DA and eventual move for mistrial. . . . I don't see any connection in the sense of it being such that by it, or by the voir dire and the jury selection, that the State again goaded your counsel into moving for a mistrial."
Although the trial court denied Mr. Jackson's motion, it ruled that the State could not use the later statements at Mr. Jackson's subsequent trial. In so ruling, the court reasoned:
"I gave the State an opportunity to reopen the motion hearings; and, of course, the Court denied the motion to suppress those statements. I think that ruling was wrong; wrong because the State would have had an opportunity on the front end to present those statements and didn't. And then the case *121 proceeded to trial and was mistried because the State tried to elicit those statements at trial. That resulted in a mistrial. But then to give the State subsequently the opportunity to present those same statements in a motion to suppress the statements, and then to allow the State to use those statements in a subsequent trial, this Court believes is wrong."
The State did not object to this ruling.
The issue defense counsel raises on appeal is whether the State, through its questioning of Officer Giroir about Mr. Jackson's later statements, intentionally provoked a mistrial.
In Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), which defense counsel cites, the Supreme Court explained that the reviewing court must look to the intent of the prosecutor in his actions to determine whether the prosecutor's actions in causing a mistrial rise to the level of prosecutorial misconduct that bars a retrial. The importance of the prosecutor's intent, the Court explained, is that "[o]nly where the governmental conduct in question is intended to `goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Oregon, 456 U.S. at 676, 102 S.Ct. at 2089. The Court also instructed that the reviewing court must give deference to the trial court's findings as to whether the prosecutor's actions were intended to goad the defendant into requesting a mistrial. Oregon, 456 U.S. at 679, 102 S.Ct. at 2091.
On appeal, defense counsel, in essence, adopts the argument Mr. Jackson raised in his pro se motion to quash. He contends that the ADA asked Officer Giroir about the later statements in order to provoke a mistrial because the jury was pro-defense. Stated otherwise, he contends that the State provoked the mistrial because it did not like the jury that had been seated. Counsel acknowledges that a trial court's decision on whether the State acted intentionally in goading the defendant into moving for a mistrial is ordinarily a question of fact that is entitled to deference on appeal. Counsel, however, contends that the trial court's finding in this case is not entitled to deference because the court failed to review the voir dire transcript before ruling on the motion. A review of the transcript, he contends, would have shown that the jury ultimately chosen for that trial contained at least two jurors who were adverse to the State.
Counsel extensively chronicles the questioning at voir dire that elicited responses by several prospective jurors regarding the following concerns:
 the inability to convict without testimony from an independent witness,
 the inability to convict for possession with the intent to distribute without evidence of an actual distribution,
 the perception that police officers lie,
 the issue of whether drugs should be legalized, and
 the prospective jurors' relationships with family and friends who had been involved with drugs.
A review of the voir dire transcript indicates that although many prospective jurors voiced the above concerns, almost all of those who did so were excused, either by the defense or by the State, or by challenges for cause. Indeed, the trial court excused many jurors for cause on the State's motion. Only three of the jurors that defense counsel mentions by name in his brief to this court were ultimately sworn as jurorsPaula Davis, Catherine Delaune, and Huong Pham.
First, Ms. Pham indicated that she had a friend who had been charged with distribution *122 of drugs. The State sought to have her removed for cause, but the trial court refused the challenge. Defense counsel argues that Ms. Pham remained on the jury because the State had already exhausted its peremptory challenges by the time the court reached her.[6] Although it is unclear if the State had exhausted its challenges by that time, the voir dire transcript indicates that when first asked by the State if the fact that her friend had been charged would affect her ability to be fair, she replied that it would not. When the State sought to excuse Ms. Pham for cause, the court held an in-chambers hearing in which it asked her if the fact that her friend had been charged with distribution of drugs would affect her ability to be fair. She replied: "I don't think so." The following colloquy then took place:
BY THE COURT:
If, in fact, you have to listen to the testimony of witnesses, you believe the State of Louisiana proved beyond a reasonable doubt that Mr. Jackson possessed with the intent to distribute heroin, could you find him guilty of it?
BY JUROR PHAM:
It would depend on how the case is going and the witness.
BY THE COURT:
If, in fact, you thought that was such and he, in fact, was guilty, would you find him guilty?
BY JUROR PHAM:
Yes. If the witness I see in my judgment, if I see that.
BY THE COURT:
On the opposite side of that, if you believe, in fact, that he wasn't guilty of the crime, would you have a problem finding him not guilty?
BY JUROR PHAM:
If there's not proof or no evidence, no.
BY THE COURT:
Would you be able to find him not guilty?
BY JUROR PHAM:
Yes. If there's no proof, I wouldn't. If there's no proof that I can find him guilty, no, I wouldn't prove [sic] that he's guilty. No.
The court then refused the challenge for cause. Thus, although Ms. Pham knew someone who had been charged with distribution of drugs, she expressly indicated that this relationship would have no affect on her ability to convict Mr. Jackson if the State proved his guilt.
The second, and only other, juror who was included on the jury that defense counsel addresses in its argument is Ms. Delaune.[7] During voir dire, Ms. Delaune indicated that she would have needed to see the crime herself to convict and that she was partial. She also indicated that the State would have to prove its case beyond a reasonable doubt. At the conclusion of the first round of jury selection, the State for some reason challenged for cause another juror who had a similar first name to Ms. Delaune, but who did not give any answers showing a bias against the State, Kathleen Eziene.[8] The State's reason for *123 challenging Ms. Eziene was her statement that "seeing is believing." This statement, however, was made by Ms. Delaune. Nonetheless, the court granted the State's challenge of Ms. Eziene. The State did not challenge Ms. Delaune, and she was selected as a juror.
Defense counsel theorizes that the State did not notice the mix-up until the following day after jury selection had been completed. At that point, counsel speculates, the State realized that it had a hostile jury. For that reason, counsel further speculates, the prosecutor intentionally asked Officer Giroir about Mr. Jackson's later statements in order to provoke a mistrial. This theory, however, is based solely on speculation. The State would have known at the end of the first round of jury selection it excused the wrong juror  if indeed it did so  when Ms. Eziene exited and Ms. Delaune remained as a juror. At that point, the State still had peremptory challenges that it could have exercised if it mistakenly excused the wrong juror.[9] Thus, it is only counsel's speculation that the State did not realize its mistake until the second day of trial when it caused the mistrial. Defense Counsel also speculates that "it would not be surprising" that the jurors who were actually seated would have been influenced by the pro-defense statements made by the prospective jurors who were excused, either for cause or by the State. Again, this is solely speculation on counsel's part.
Although the trial court did not review the voir dire transcript before denying the second motion to quash (Mr. Jackson's pro se motion), the trial judge was present during voir dire; he, therefore, possessed personal knowledge of those proceedings.
In order to hold that Mr. Jackson was entitled to a dismissal of the charges due to a violation of his right against double jeopardy, this court must find that the State's action in questioning Officer Giroir about Mr. Jackson's later statements was a bad faith attempt to stop the trial. While the trial court did not make an explicit finding on this issue, it made an implicit finding that the State did not act in bad faith. The court's finding is implicit in its statement that it could see no advantage the State would have reaped by intentionally causing the mistrial.
This court's prior holdings in State v. Elzey, XXXX-XXXX (La.App. 4 Cir. 1/11/06), 923 So.2d 182, writ denied, XXXX-XXXX (La.9/15/06), 936 So.2d 1253, and State v. Johnson, 1995-2626, 1995-2801 (La.App. 4 Cir. 11/27/96), 684 So.2d 554, are distinguishable. In both those cases, the trial court found the State intentionally provoked a mistrial, and we affirmed those findings.[10] In this case, the trial court, albeit implicitly, found to the contrary.
*124 The ADA who covered the 2003 suppression hearing, at which only Officer James testified, was not the same ADA who presided over the trial and who questioned Officer Giroir about Mr. Jackson's later statements. Rather than showing that the question was an intentional act to provoke a mistrial, the act could just as likely have been the product of an ADA who was not properly prepared for trial and who was unaware that the later statements had not been brought out before trial. Given these circumstances, we cannot say that the trial court erred in finding the defense failed to prove the ADA asked the question in bad faith in order to provoke a mistrial. Absent a showing of bad faith, the Due Process Clause was not violated. We thus find this claim unpersuasive.
D. Mr. Jackson's Assignments of Error
Mr. Jackson assigns three errors. First, he contends that his conviction and sentence must be vacated because the State presented perjured testimony  Officer Giroir's testimony about the later statements. We disagree.
Mr. Jackson argues that Officer Giroir was allowed to present this testimony at the first trial, but the jury in that trial was not allowed to hear testimony from Officer James, who indicated that he did not hear the later statements. However, the trial court granted the defense motion for mistrial, and the jury was dismissed after Officer Giroir's testimony.
Mr. Jackson further argues that the State engaged in prosecutorial misconduct by presenting Officer Giroir's testimony regarding the later statements at the suppression hearing held a few weeks after the first trial. In support of this argument, he relies on the lack of any reference to the later statements in the police report and the failure of Officer James to mention these statements in his testimony at either the 2003 suppression hearing or the December 2004 hearing.
The presentation of Officer Giroir's testimony regarding the later statements did not prejudice Mr. Jackson. Before the subsequent trial, the court suppressed the later statements. No evidence of the later statements was presented at Mr. Jackson's second trial. His conviction was not a product of any prosecutorial misconduct or perjured testimony.
By his second assignment of error, Mr. Jackson contends that his counsel was ineffective for failing to object to the allegedly perjured testimony given by Officer Giroir concerning the later statements. Mr. Jackson argues that counsel should have objected at the first trial to this testimony and should have used Officer James' testimony from the 2003 suppression hearing to impeach Officer Giroir's testimony on this point. He also argues that counsel was ineffective for failing *125 to object to Officer Giroir's testimony concerning this matter at the December 2004 suppression hearing on the statements. He maintains that his right to a fair trial was violated by his counsel's inaction.
Ordinarily, an ineffective assistance claim is better addressed in an application for post-conviction relief filed in the trial court in which a full evidentiary hearing can be held. However, when the record is sufficient to permit a determination of counsel's effectiveness at trial, the claims may be addressed on appeal. Indeed, when the appellate record is sufficient, judicial economy justifies considering the issue on appeal.[11] Such is the case here.
The standard for assessing an ineffective assistance of counsel claim is well-settled; the two-prong standard enunciated in the seminal case of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), must be applied. In order to prevail, a defendant must establish both that counsel's performance was deficient and that the deficiency prejudiced the defendant. As to the former, the defendant must show that counsel made errors so serious that counsel was not functioning as the "counsel" the Sixth Amendment guarantees. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. As to the latter, the defendant must show that his counsel's errors were so serious as to deprive him of a fair trial  a trial the result of which is reliable.[12] To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different; "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 669, 104 S.Ct. at 2056.[13]
An "effective counsel" has been defined as "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." State v. Anderson, 1997-2587, p. 7 (La.App. 4 Cir. 11/18/98), 728 So.2d 14, 19 (citing State v. Seiss, 428 So.2d 444 (La. 1983)). Given that "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Crowell, 1999-2238, p. 8 (La.App. 4 Cir. 11/21/00), 773 So.2d 871, 878 (quoting State v. Brooks, 505 So.2d 714, 724 (La.1987)). Trial strategy type errors do not constitute ineffective assistance of counsel. Id.[14]
*126 In this case, defense counsel neither specifically objected at the first trial to Officer Giroir's testimony regarding the later statements made by Mr. Jackson, nor tried to use Officer James' suppression hearing testimony to impeach this testimony. Instead, counsel moved for and obtained a mistrial after the State presented this testimony. The jury that heard this allegedly perjured testimony was dismissed. Mr. Jackson was not prejudiced by his counsel's actions.
Nor was counsel ineffective for failing to object to the State's introduction of this testimony at the suppression hearing. The purpose of that hearing was to rule on the defense motion to suppress the later statements, and the State presented this testimony in an attempt to defeat the motion. In addition, defense counsel cross-examined Officer Giroir regarding the lack of any reference to these statements in the police report. The defense also established at the second suppression hearing that Officer James did not hear the later statements, even though he was present at the places where Officer Giroir testified Mr. Jackson made them. The trial court ultimately suppressed the later statements, and the statements were not introduced at the second trial in which Mr. Jackson was convicted. Again, Mr. Jackson was not prejudiced by his counsel's actions or alleged inactions.
We understand Mr. Jackson's final claim to be that his counsel was ineffective for failing to advise him that he had to consent to the mistrial motion before it was granted. He cites La.C.Cr.P. art. 775, which provides in pertinent part that "[a] mistrial may be ordered, and in a jury case the jury dismissed, when: (1) The defendant consents thereto." He also cites the official comment to Article 775, which refers the reader to the provisions of La. C.Cr.P. art. 591, which provides in pertinent part: "No person shall be twice put in jeopardy of life or liberty for the same offense, except . . . where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant." Moreover, he cites State v. DeGrate, 25,732 (La.App. 2 Cir. 3/30/94), 634 So.2d 965, for the proposition that mistrials granted without the defendant's consent and not under the other circumstances set forth in art. 775 (none of which applies to this case) constitute illegal dismissals and trigger the principles of double jeopardy.
Mr. Jackson appears to argue that had his counsel not moved for the mistrial, the evidence, including what he terms the perjured testimony, would have gone to the jury. He theorizes that the jury would have acquitted him, thereby obviating a need for a second trial. Because he did not consent to the mistrial motion made by his counsel, he argues that the mistrial was an illegal dismissal and that his retrial violated his right against double jeopardy.
Although it is unclear from the record whether defense counsel discussed the mistrial with Mr. Jackson before he made the motion,[15] Mr. Jackson has not shown any prejudice from counsel's actions. It is *127 mere speculation that the first jury would have acquitted him had the case proceeded. Counsel's motion for mistrial was trial strategy, which does not constitute ineffective assistance of counsel.

DECREE
For the foregoing reasons, the defendant's conviction is affirmed. The defendant's sentence is amended to delete the prohibition on parole eligibility. The trial court's dismissal of the State's multiple bill is reversed, and the case is remanded for further proceedings on the multiple bill.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] This court denied Mr. Jackson's writ application noting that he had an adequate remedy on appeal if ultimately convicted. State v. Jackson, XXXX-XXXX (La.App. 4 Cir. 3/14/05)(unpub.).
[2] This court denied Mr. Jackson's writ application noting that he had an adequate remedy on appeal. State v. Jackson, XXXX-XXXX (La. App. 4 Cir. 3/29/05)(unpub.).
[3] The statements the trial court held inadmissible, as discussed elsewhere, are previously undisclosed statements that Officer Jason Giroir testified at the first trial that Mr. Jackson made after he was given his Miranda rights. Mr. Jackson allegedly made these statements at the scene, in the police car, and at the station. Officer Giroir's testimony regarding these statementswhich for ease of reference we refer to in this opinion as the "later statements"was the reason the first trial ended in a mistrial.
[4] The transcript of sentencing also indicates the trial court so ordered.
[5] Although Mr. Jackson filed a motion to quash the multiple bill, he did not allege this ground as a basis to quash the bill. Mr. Jackson's motion raised three issues: the State failed to prove he was the person who was previously convicted of the listed crimes, the State failed to prove he was adequately Boykinized in these prior cases, and the State failed to comply with the requirements of La. R.S. 15:529.1.
[6] Although the minute entry of the first trial indicates that the State exercised only eleven peremptory challenges, the jury sheets indicate that the State used all twelve of its challenges by the time the jury was chosen.
[7] Defense counsel mentions in passing Ms. Davis, who indicated she had seen a drug transaction and had not contacted the police to be a witness. She also stated she had family members who had drug problems. She insisted, however, that this fact would not affect her ability to listen to the trial. Counsel makes no argument about her inclusion in the jury.
[8] The State referred to this juror as both "Catherine Eziene" and "Kathleen." The State's objection was that "Catherine said that seeing is believing. She said some other stuff, Kathleen."
[9] Ms. Delaune was seated during the first round of voir dire. The jury sheets indicate the State used peremptory challenges in the second round; thus, it could have used one to excuse Ms. Delaune before the second round of jury selection.
[10] In Elzey, the defendant was charged with the attempted murder of his estranged wife's new boyfriend. The court ruled that the State could not elicit any testimony concerning the outcome of a domestic disturbance between the defendant and his wife because the charge had been dropped and because the State had not given pretrial notice of its intent to produce evidence of that incident. Although the State was allowed to elicit testimony concerning a "stay away" order the wife obtained, on rebuttal the State recalled the wife and asked her if she had called the police concerning the incident that resulted in the issuance of the order. At that point, the defense moved for a mistrial, which the court granted. The court later granted the defendant's motion to quash the charge, finding that the prosecutor intentionally violated its ruling as to evidence of the municipal charge. This court affirmed, upholding the trial court's ruling that the State's actions intentionally provoked the mistrial. This court noted that the transcripts of trial and the post-trial hearing did not support the State's allegation that it had misunderstood the trial court's ruling as to this evidence.

In Johnson, the defense presented a character witness, the defendant's uncle. The uncle admitted his drug use, but he insisted that the defendant was never involved with drugs. During cross-examination, the prosecutor asked the witness if he knew that the defendant had a drug conviction. The court granted the defendant's motion for mistrial, despite the prosecutor's insistence that his question was inadvertent. The court later granted the defendant's motion to quash, finding that the prosecutor's other questions to the witness concerning the defendant's drug use showed that the question was asked intentionally. This court affirmed, finding the transcripts supported the trial court's finding.
[11] See State v. Howard, XXXX-XXXX, p. 15 (La.4/23/99), 751 So.2d 783, 802; State v. Bordes, XXXX-XXXX, p. 7 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147; State v. McGee, XXXX-XXXX, p. 4 (La.App. 4 Cir. 3/15/00), 758 So.2d 338, 341; State v. Causey, 1996-2723, p. 10 (La.App. 4 Cir. 10/21/98), 721 So.2d 78, 84; State v. Kanost, XXXX-XXXX, p. 6 (La.App. 4 Cir. 3/29/00), 759 So.2d 184, 188.
[12] See State v. Fuller, 454 So.2d 119 (La. 1984); State v. Brooks, 1994-2438, p. 6 (La.10/16/95), 661 So.2d 1333, 1337 (on reh'g); State v. Robinson, XXXX-XXXX, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126; State v. Jackson, 1997-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741; State v. Ash, 1997-2061, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669; McGee, XXXX-XXXX at p. 5, 758 So.2d at 342.
[13] State v. Guy, XXXX-XXXX, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236; State v. Mims, XXXX-XXXX pp. 44-45 (La.App. 4 Cir. 6/21/00), 769 So.2d 44, 72; State v. Crawford, 2002-2048 (La.App. 4 Cir. 2/12/03), 848 So.2d 615.
[14] See also State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986); State v. Bordes, XXXX-XXXX, p. 8 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147 (quoting Bienemy, 483 So.2d at 1107 and noting that "[t]his court has previously recognized that if an alleged error falls `within the ambit of trial strategy' it does not `establish ineffective assistance of counsel'"); State v. Brooks, 505 So.2d 714, 724 (La.1987); State v. Griffin, XXXX-XXXX, pp. 9-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40; State v. Myers, XXXX-XXXX (La.App. 4 Cir. 11/3/04), 888 So.2d 1002, writ denied, 2004-2475, 2004-2946 (La.2/4/05), 893 So.2d 85, 86.
[15] The transcript of the in-conference hearing at which counsel made the mistrial motion does not indicate whether Mr. Jackson was present, nor does the minute entry for that day of the first trial.