DENNIS R. BAGNERIS, SR., Judge.
hOn November 20, 2003, the defendant, Lawrence Elzey, was charged by bill of information with the attempted second degree murder of Brian Hanson, in violation of La. R.S. 14:(27)30.1. The defendant entered a plea of not guilty at his arraignment on November 25, 2003. The defendant filed suppression and discovery motions on December 1, 2003. A suppression and preliminary hearing was held on April 19, 2004. The trial court found probable cause and denied defendant’s motion to suppress evidence. A jury trial was conducted on September 13, 2004, and September 22, 2004. Defendant’s motion for mistrial was granted during the State’s examination of its rebuttal witness. On October 28, 2004, the defendant filed a motion to quash the bill of information. After a hearing on the same date, the trial court granted the motion to quash.
STATEMENT OF FACT[1]
Tina Watson, the defendant’s estranged wife, testified that they were married on August 24, 2001, and had one child, a boy, together. They separated between May and June, 2002, and she subsequently fíléd for divorce. On September 19, 2003, she and a friend, Brick, were outside of her apartment playing Lwith her son. The defendant approached them, picked up the child, and walked to his vehicle. Ms. Watson called to her boyfriend, Brian Hanson, who was sleeping in the apartment, that the defendant was trying to take her son. Watson, Brick, and Hanson ran after the defendant. They found him and the child *184 near the defendant’s vehicle. A verbal argument and struggle ensued between Watson and the defendant. The defendant gave the child to Watson and left. Shortly thereafter, the defendant returned and approached Watson and Hanson. The defendant was armed with a gun. The defendant shot Hanson, who was holding the child, injuring him in the chest and leg. The defendant took the child and left. Watson then called 911. Hanson was taken to the hospital while Watson gave a statement to the police. The defendant’s mother returned the child to her later that evening.
The defendant, Lawrence Elzey, testified that he shot Hanson in self — defense. He claimed that Hanson was armed with a gun. Elzey stated he, not Hanson, was holding the child when he shot Hanson.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

The State argues that the trial court erred when it granted the defendant’s motion to quash the bill of information. The trial court granted the motion to quash after finding that the State intentionally caused the defendant to move for a mistrial.[2] The State contends the trial court erred in finding that the State intentionally caused a mistrial.
|aThe trial court granted the defendant’s motion for mistrial during the State’s examination of its rebuttal witness, Tina Watson. During the cross examination of Watson by defense counsel during the State’s case-in-chief, Watson stated that she had obtained a “stay away order” against the defendant for a prior incident of domestic abuse which allegedly occurred on January 2, 2003, when the defendant found plaintiff in bed with Hanson. On redirect, the State interrogated Watson about the facts of the incident. Watson testified that the defendant broke into her home, threatened her, and broke her nose. Watson further stated that the defendant was arrested and she obtained a “stay away order” against the defendant. Defense counsel objected to the testimony, and the trial court held a meeting in chambers to discuss the issue. The trial court ruled that since the defendant brought up the issue during cross-examination, the State could question Watson about the incident. However, the State could not question Watson about the outcome of the case because the State did not have the Municipal Court documents to show the outcome of the case.
Subsequently, the defendant testified on direct examination that he and Watson separated on December 27, 2003. He admitted that he went to the apartment on January 2, 2003, to retrieve his vehicle. As he still had a key, he let himself into the house. He walked into the bedroom, and saw Hanson and Watson in bed. He asked Watson for the car keys, and they proceeded to argue about the children. On cross-examination, the defendant acknowledged that he and Watson had an altercation that morning. Defense counsel objected when the State asked, “Do you deny that you physically hurt her that morning?”
The trial court had counsel meet in chambers to discuss the objection. The trial court informed the State that it would not permit any further testimony about j^the alleged incident without proof as to *185 whether anyone was arrested or whether the case went to Municipal Court. The State then informed the trial court that it had just obtained a copy of the Municipal Court record. The record revealed that the defendant was arrested and- a stay away order issued on January 3, 2003. However, the record also indicated that the charge was dismissed “likely for failure to contact.” The trial court informed the State that since the charges were dropped and there was no medical evidence to support Watson’s allegation of a broken nose, it would not be permitted to ask any questions about the alleged incident of January 2, 2003. The only questions the State could ask of the defendant is whether he found Watson and Hanson in bed and whether the defendant told Hanson that “this has nothing to do with you.” The trial court instructed defense counsel that he could only elicit information that the stay away order was dismissed.
At that point, the State indicated that it had five other incidents of domestic violence for which the defendant was arrested. The State sought to introduce evidence of these five incidents as impeachment evidence if the defendant denied the existence of the stay away order. The trial court denied the State’s request, stating the State was trying to “back door” prior bad acts because the State did not file a La. C.E. art. 404 B [3] motion.
When they returned to open court, the State continued its cross-examination of the defendant. The defendant denied any knowledge of the stay away order ^issued on January 3, 2003. On redirect, the defendant established that the charge and stay away order were dismissed.
On rebuttal, the State questioned Tina Watson about the prior incident. Defense counsel objected when the State posed the question, “What action did you take as a result of his (defendant’s) visit to your home?” The State then asked, “My question to you is: Did you call the police?” At that point, defense counsel moved for a mistrial which the trial court granted.
At the motion to quash hearing held on October 27, 2004, the State argued that it did not intentionally cause a mistrial. The State contended that it misunderstood the trial court’s rulings about the admissibility of testimony concerning the prior incident of January 2, 2003. The trial court found that the State intentionally violated its ruling which prohibited any further testimony concerning prior bad acts.
In United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), the United States Supreme Court addressed the question of whether the Double Jeopardy Clause of the Fifth Amendment was violated by the retrial of a defendant whose original trial had ended in a mistrial at his request. Ordinarily, the Double Jeopardy Clause does not stand in the way of re-prosecution where defendant has requested a mistrial. However, in Dinitz, the court noted:
*186 | The Double Jeopardy Clause does protect a defendant against governmen-7 tal actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where “bad-faith conduct by judge or prosecutor,” United States v. Jorn, supra, 400 U.S. [470] at 485, 91 Slot [547] at 557, 27 L.Ed.2d 543 threatens the “(h)arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict” the defendant. Downum v. United States, 372 U.S. [734] at 736, 83 S.Ct. [1033] at 1034, 10 L.Ed.2d (100) at 102.
424 U.S. at 611, 96 S.Ct. at 1081.
In Oregon v. Kennedy, 456 U.S. 667, 674-76, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 4161 (1982), the Court explained that the intent of the prosecutor must be examined to determine whether the double jeopardy claiise has been violated because of prose-cutorial misconduct:
: Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on dfefendant’s motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant’s motion for a mistrial constitutes “a deliberate election on Ms part to forgo his valued right to have his guilt or innocence determined before the first trier of fact” United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, “[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.” United States v. Dinitz, supra, 424 U.S., at 609, 96 S.Ct., at 1080. Only where the governmental conduct in question is intended to “goad” the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.
456 U.S. at 675-76, 102 S.Ct. at 2089.
The Court held that a defendant may invoke the bar of double jeopardy only-in cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. The Court in Kennedy gave deference to the trial court’s findings that the prosecutorial conduct resulting in the termination of the defendant’s first trial was not intended by the prosecutor and elected not to disturb the ruling of the trial court.
In State v. Johnson, 95-2626 (La.App. 4 Cir.11/27/96), 684 So.2d 554, the defendant obtained a mistrial when the prosecutor questioned a defense witness on whether the defendant had a prior drug conviction. The defendant subsequently |7filed a motion to quash the bill of information. At the motion hearing, the prosecutor admitted that he went beyond the scope of questioning a witness in an attempt to impeach the witness but argued that the question was only an inadvertent slip and not an intentional attempt to provoke a mistrial. The trial court granted the motion to quash the bill of information. This court affirmed the trial court’s ruling noting that the prosecutor’s question was not an isolated reference to the defendant’s criminal history and the prosecutor rationalized his line of questioning immediately after the mistrial was granted. This court found that the trial court had made a factual finding that the prosecutor’s conduct was intentional and that such a finding was not an abuse of discretion.
*187 In the present case, the trial court made a factual finding that the State’s action in provoking a mistrial was intentional. The State continued to question Watson about the alleged incident of January 2, 2003, despite the ruling by the trial court that it would not allow any more testimony about the incident since the municipal court records revealed that the charge and stay away order were dismissed. The trial court warned the State about attempting to introduce evidence of prior bad acts. The trial court specifically told the State that it would not allow the State to “back door” evidence of prior bad acts. If the State wished to introduce such evidence, it should have filed a 404 B motion. The State’s argument that it misunderstood the trial court’s ruling and did not intend to cause a mistrial is not supported by the trial and hearing transcripts. The trial court delineated which questions would be allowed by the State and defense counsel. The State went beyond the limits set by the trial court when it attempted to ask Watson if she called the police on January 2, 2003. The trial court’s factual finding that the State intentionally provoked a mistrial is supported by the record. The trial court did not abuse its discretion in its ruling.
| «Finding that the State intentionally provoked a mistrial, it is now barred by double jeopardy from pursuing a second trial against the defendant on the charge of attempted second degree murder. The trial court did not err when it granted the defendant’s motion to quash the bill of information.
CONCLUSION
Accordingly, the trial court’s judgment granting the motion to quash is affirmed.
AFFIRMED

. The statement of facts is taken from the trial testimony of Tina Watson and the defendant. Their testimony was the only testimony included in the appellate record.

. La.C.Cr.P. art. 770 provides in part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to ... [ajnother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.

. La.C.Cr.P. article 404 provides in pertinent part:
B. Other crimes, wrongs, or acts.
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to Introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.