# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**13-529 consolidated with 13-530**



**STATE OF LOUISIANA**

**VERSUS**

**JUSTIN ROBERT SIZEMORE**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 79569
HONORABLE JAMES R. MITCHELL, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and J. David Painter, Judges.


**AFFIRMED.**


**Asa A. Skinner**
**District Attorney**
**Drew W. Mason**
**Assistant District Attorney**
**Terry W. Lambright**
**Assistant District Attorney**
**Post Office Box 1188**
**Leesville, LA   71496-1188**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**400 Travis Street, Suite 1702**
**Shreveport, LA   71101**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Justin Sizemore**

**Justin Sizemore**
**Spruce-3 Main Prison**
**Louisiana State Prison**
**Angola, LA   70712**
**IN PROPER PERSON**

**AMY, Judge.**

The defendant was charged with second degree murder and conspiracy to commit second degree murder. Ultimately, a jury found the defendant guilty of both charges. For the defendant's conviction for second degree murder, the trial court sentenced the defendant to life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. For the defendant's conviction for conspiracy to commit second degree murder, the trial court sentenced the defendant to twenty-five years at hard labor, to be served consecutively to any other sentence. The defendant appeals. For the following reasons, we affirm.

## Factual and Procedural Background

On the morning of June 14, 2010, a passerby found the body of Christopher Hoffpauir in a ditch on the side of Garwood Busby Road. According to the State, the defendant, Justin Robert Sizemore, along with Kristyn Hoffpauir, conspired to murder Christopher, who was Kristyn's estranged husband.

The defendant was charged with second degree murder, a violation of La.R.S. 14:30.1, and conspiracy to commit second degree murder, a violation of La.R.S. 14:26 and La.R.S. 14:30.1.[1] The defendant's first trial ended in a hung jury. During the defendant's second trial, the defense made a motion for a mistrial on the basis that the State failed to provide the defense with *Brady* material. Although it is unclear from the record to what extent the State agreed with the defense on that issue, the record indicates that, at minimum, the State did not object to a mistrial. The trial court granted the motion for a mistrial. After the defendant's third trial, the jury returned guilty verdicts as to both charges.

---

[1] The defendant's charges were filed under separate docket numbers. However, the record indicates that the charges were consolidated for trial. The defendant's cases were also consolidated on appeal.

Thereafter, for the defendant's conviction for second degree murder, the trial court imposed a sentence of life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. For the defendant's conviction for conspiracy to commit second degree murder, the trial court imposed a sentence of twenty-five years at hard labor, to be served consecutively to any other sentence.

The defendant appeals, asserting as error that:

1. There was insufficient evidence to prove that Justin Robert Sizemore was guilty beyond a reasonable doubt of the offenses of second degree murder or conspiracy to commit second degree murder.

2. The loss of exculpatory evidence denied Justin Robert Sizemore his constitutional right of confrontation and due process.

3. Justin Robert Sizemore's Double Jeopardy Clause rights were violated when he was tried after being forced to seek a mistrial by prosecutorial misconduct that required a mistrial to be declared.

4. The Trial Court erred by imposing an unconstitutionally harsh and excessive sentence.

The defendant has also filed a pro se brief, assigning as error therein that the evidence is insufficient to support his convictions; that the State lost exculpatory evidence which interfered with his rights to confrontation and due process; that his double jeopardy rights were violated; that there was improper contact with a juror by persons associated with the prosecution; and that Louisiana's rules concerning non-unanimous juries are unconstitutional.

## Discussion

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all criminal appeals are reviewed for errors patent on the face of the record. We find no errors patent which require correction.

*Double Jeopardy*

The defendant asserts, in both his counseled and pro se briefs, that his convictions violate the constitutional prohibitions on double jeopardy due to the mistrial granted in his second trial. The constitutional protections contained in the United States and Louisiana constitutions protect criminal defendants from repeated prosecutions for the same offense. U.S. Const. amend. V; La.Const. art. 1 § 15. The standard concerning the application of the double jeopardy doctrine to cases involving mistrials was addressed in *Oregon v. Kennedy*, 456 U.S. 667, 675-76, 102 S.Ct. 2083, 2089 (1982), wherein the United States Supreme Court stated that:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. . . . Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

Here, the record reflects that, after the defendant's first trial but before his second trial, one of the Vernon Parish detectives interviewed Jody Thibeaux.[2] During that interview, Mr. Thibeaux told the detective that he had heard that a loaded gun had been found in Kristyn's bedroom at least three years before Christopher's murder. However, the detective failed to put that information in his report, and the record indicates that it was not provided to the defendant. On the eighth day of the second trial, the defense learned that the State had information concerning Kristyn's previous possession of a handgun. Based on the State's failure to disclose what it contended was clearly *Brady* material, the defense

_____

[2] Mr. Thibeaux's last name is also spelled as "Thibodeaux" in the record.

3

moved for a mistrial. Although it is unclear from the record to what extent the State conceded that there was a *Brady* violation, it appears that, at minimum, the State did not object to the trial court's grant of the mistrial.[3]

Before the defendant's third trial, the defense filed a motion to quash on the basis that the State intentionally provoked a mistrial and that the prosecution was now barred by double jeopardy. The defendant argued that the State was in bad faith in failing to provide the *Brady* material and that the State engaged in a "continuing course of conduct" by repeatedly failing to provide *Brady* material. After a hearing, the trial court found that the evidence did not support a conclusion that the State intended to provoke a mistrial or that the defendant had suffered any prejudice as a result of the grant. Accordingly, the trial court denied the defendant's motion.

Even if the State's actions could be construed as overreaching or harassment, the defendant still had to prove that the State intended to provoke the mistrial. Our review of the record reveals that the defendant failed to do so. Thus, we find no manifest error in the trial court's factual determination that there was insufficient evidence to prove that the State intended to provoke a mistrial and that the defendant did not suffer any prejudice as a result of the mistrial. *See State v. Williams*, 478 So.2d 983 (La.App. 4 Cir. 1985), *writs denied*, 483 So.2d 1019 (La.1986), and 488 So.2d 1029 (La.1986), *compare with State v. Elzey*, 05-562 (La.App. 4 Cir. 1/11/06), 923 So.2d 182, *writ denied*, 06-395 (La. 9/15/06), 936 So.2d 1253.

---

[3] According to the record, the State did not object to the defendant's motion for mistrial. Subsequently, at the hearing on the motion to quash, the State disagreed with the defendant's assertion that the State had previously conceded that the failure to provide the defense with the information constituted a *Brady* violation.

Thus, we find no merit to the defendant's arguments in this regard.

*Sufficiency of the Evidence*

In both his counseled and pro se briefs, the defendant contends that the evidence was insufficient to support his convictions.

> It is well-settled that the evidence is sufficient to support the conviction when any rational trier of fact, in viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the *Jackson* standard of review. *See State v. Richardson*, 425 So.2d 1228 (La.1983).

*State ex rel. Graffagnino v. King*, 436 So.2d 559, 563 (La.1983). Further, the reviewing court should give great deference to the jury's decision to accept or reject a witness' testimony, in whole or in part. *State v. Grace*, 10-1222 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, *writ denied*, 11-961 (La. 10/21/11), 73 So.3d 382.

As relevant herein, second degree murder is defined as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1(A). Conspiracy is defined in La.R.S. 14:26(A) as:[4]

> the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

---

[4] We note that the legislature amended La.R.S. 14:26 in 2013 to renumber its subsections. However, the amendment does not change the substance of La.R.S. 14:26. *See* 2013 La. Acts 220, effective June 11, 2013.

5

Additionally, we note that La.R.S. 14:26(B) specifically permits prosecution for both conspiracy and the completed underlying crime. *See also State v. Alexander*, 43,796 (La.App. 2 Cir. 1/14/09), 2 So.3d 1168, *writ denied*, 09-368 (La. 11/6/09), 21 So.3d 299.

The State's primary witness was Kristyn Hoffpauir. Kristyn testified that, in the late hours of June 13, 2010, she had arranged to meet Christopher at his parents' house. She and the defendant travelled from Rapides Parish together, and, according to her testimony, the defendant put a gun in the car before they left. On the way, the defendant struck an ice chest in the middle of the road. Kristyn testified that, after the defendant checked the damage to the front end of the car, she and the defendant continued on to Garwood Busby Road in Vernon Parish, where they discussed whether the defendant would come with her to pick up Christopher. According to Kristyn, they eventually decided that the defendant would wait on Garwood Busby Road and that Kristyn would get Christopher and return to Garwood Busby Road.

Kristyn stated that, when she came back with Christopher, they both got out of the car. The defendant then emerged from his hiding place and shot Christopher repeatedly. The forensic pathologist's testimony indicated that at least two of Christopher's wounds would have been fatal, and one of them likely caused instantaneous death. According to Kristyn, the defendant retrieved as many spent shell casings as he could find, but he later stated that he had not gotten all of them. Leaving Christopher's body behind, the pair returned to Rapides Parish, stopping for drinks at a drive-thru. Further, Kristyn testified that the defendant disposed of the gun that he had used to shoot Christopher and of the clothes they were wearing when the murder occurred. Other testimony indicated that, although Kristyn led

investigators to the creek where the defendant disposed of the gun, investigators were unable to locate the murder weapon.

Kristyn denied that she knew that the defendant was going to kill Christopher. However, she admitted that she had pled guilty to manslaughter, conspiracy to commit manslaughter, and obstruction of justice in connection with Christopher's murder.[5] Additionally, Shayna LeBlanc testified that on the evening of Christopher's death, Kristyn had begged her to babysit for Kristyn's young son and to keep her cell phone. Ms. Leblanc testified that Kristyn told her that "they" were going to "beat up Chris."

However, there was also evidence indicating that there were inconsistencies in Kristyn's testimony and that Kristyn had previously offered several versions of the events surrounding Christopher's murder. She originally denied being involved. Later, she stated that the defendant had hidden in the trunk of the car and had gotten out through the back seat. One of the investigators testified that, because of the car's design, it was physically impossible for the defendant to exit the trunk through the back seat. For some time, Kristyn maintained that the defendant hid in the trunk and got out of the trunk once they arrived at Garwood Busby Road.

Further, Kristyn denied that she knew about Christopher's $400,000.00 life insurance policy which named her as the beneficiary. However, Jody Thibeaux testified that Kristyn had told him that she was the beneficiary of a large life insurance policy on Christopher. Mr. Thibeaux also testified that on June 14,

---

[5] Kristyn was sentenced on those charges after the defendant's trial. Her convictions and sentences were affirmed in *State v. Hoffpauir*, 12-862 (La.App. 3 Cir. 2/6/13), 107 So.3d 146, and *State v. Hoffpauir*, 12-865 (La.App. 3 Cir. 2/6/13), 107 So.3d 146.

2010, Kristyn told him that she had killed Christopher but that he thought it was a lie. Additionally, the defense offered evidence that, several years before Christopher's murder, family members found a loaded gun in Kristyn's bedroom.

Additional testimony and evidence corroborated portions of Kristyn's testimony. Investigators testified that they retrieved a red convertible from the defendant's father's garage. The investigators testified that the car had front end damage, including broken lights, and that the car appeared to have been "wiped down." However, they were able to identify what they considered to be possible blood spatter on the car, and some of those samples tested positive for "mammal blood." Further, they located the damaged ice chest on the highway, as well as pieces that appeared to match the convertible's broken turn signal and fog light.

The defendant chose to testify. The defendant denied conspiring with Kristyn to murder Christopher and denied that he was present at the murder scene. The defendant claimed that Kristyn lied to him about the purpose of their late-night trip to Vernon Parish. His version of the events of June 13-14, 2010, was substantially similar to Kristyn's, until the point at which their car struck the ice chest. The defendant claimed that when he got out to check the damage and to attempt to speak with the driver of another vehicle that had stopped, Kristyn got into the driver's seat of the car and drove off, leaving him stranded on the side of the road with no phone and no wallet. According to the defendant, Kristyn returned approximately thirty minutes later, and he noticed nothing odd about her appearance or behavior thereafter.

In *State v. Hollins*, 08-1033, p. 4 (La. 6/26/09), 15 So.3d 69, 71-72 (footnotes and citations omitted), the supreme court addressed convictions based on accomplice testimony, stating:

In Louisiana, as a general principle of law, a conviction may be sustained on the uncorroborated testimony of a purported accomplice, although the jury should be instructed to treat such testimony with great caution. However, where there is material corroboration of the accomplice's testimony, the cautionary accomplice instruction is not required.

After reviewing the evidence in the light most favorable to the prosecution, we conclude that the jury could have found the essential elements of both second degree murder and conspiracy to commit second degree murder beyond a reasonable doubt. With regard to the second degree murder charge, the evidence, most notably Kristyn's testimony, was sufficient to support a conclusion that the defendant shot Christopher Hoffpauir multiple times, causing his death. We note that "the act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill." *State v. Lawson*, 08-123, p. 10 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 524.

With regard to the conspiracy charge, although Kristyn denied that she had any knowledge that the defendant was going to shoot Christopher, we note that it is within the jury's fact-finding authority to accept or reject a witness' testimony *in whole or in part*. Knowing that Kristyn was still awaiting sentencing, the jury could have rejected Kristyn's denial of her involvement as an attempt to downplay her culpability for Christopher's death. Further, there is additional evidence which is sufficient to support a conclusion that Kristyn and the defendant agreed to murder Christopher and took steps to execute their plan, including testimony concerning Kristyn's previous knowledge of the life insurance policy, testimony concerning Kristyn's statement that "they" were going to "beat up" Christopher, testimony concerning Kristyn and the defendant's agreement that the defendant

9

would wait for Kristyn to bring Christopher back to an isolated rural road in the middle of the night, and testimony that the defendant procured a gun immediately before he and Kristyn drove to Vernon Parish.

Accordingly, we find no merit to the defendant's arguments concerning the sufficiency of the evidence.

*Spoliation of Exculpatory Evidence*

The defendant also alleges that his constitutional due process protections were violated by the State's failure to preserve allegedly exculpatory evidence in the form of text messages contained on Kristyn's cell phone.

The record indicates that on July 16, 2010, Kristyn was arrested by Vernon Parish Sheriff's deputies. Her cell phone was taken into evidence at that time. Detective Steven Moss testified that when he examined the phone on that date, there were approximately ten text messages on the phone, none of which appeared pertinent to the investigation or to have any evidentiary value. According to Detective Moss, everything before June 14, 2010, was deleted. He declined to speculate who had deleted the messages "other than possibly Kristyn herself prior to her arrest." At some later date, when the investigators attempted to examine the phone and its contents again, the texts were no longer on the phone. Detective Moss testified that he later learned that Kristyn had activated a setting on her phone which purged her text messages after 30 days and that after doing some research, he concluded that he would be unable to retrieve them. Although the State concedes that a certain number of text messages were lost, it is unclear from the record exactly how many were deleted.

"Spoliation of the evidence" is a term used to refer to intentional destruction of evidence for the purpose of preventing an opposing party from using the

10

evidence. *State v. Crossley*, 48,149 (La.App. 2 Cir. 6/26/13), 117 So.3d 585. If spoliation is established, there is a presumption that the evidence would have been detrimental to the destroying party's case. *Id.* However, if the destruction is adequately explained, the presumption does not apply. *Id.* "In criminal cases, an appellant is not deprived of his due process rights based on the state's failure to preserve potentially exculpatory evidentiary material unless bad faith is demonstrated." *State v. Goosby*, 47,772, pp. 13-14 (La.App. 2 Cir. 3/6/13), 111 So.3d 494, 503, *writ denied*, 13-760 (La. 11/1/13), __ So.3d __. *See also Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333 (1988).

Here, the evidence supports the trial court's conclusion that there was no evidence of bad faith on the part of the officers and that the defendant was therefore not deprived of his due process rights. The testimony was that some of the text messages at issue had already been deleted when the investigators took Kristyn's cell phone into evidence. Further, Detective Moss testified that the few text messages that were on the cell phone were lost because the investigators were unaware that the phone had an "auto-delete" setting engaged.

Thus, we find no merit to the defendant's arguments in this regard.

*Excessive Sentence*

In his counseled brief, the defendant alleges that his sentences were unconstitutionally excessive. He contends that the trial court failed to adequately consider the mitigating factors, including the defendant's age, work history, disability, and military service.

The sentence for second degree murder is life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. La.R.S. 14:30.1(B). Mandatory sentences are presumed to be constitutional. *State v.*

*Richards*, 12-1354 (La.App. 3 Cir. 6/5/13), 114 So.3d 639 (citing *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672). In order for a departure from the mandatory sentence to be warranted, the defendant must show that he is somehow exceptional; i.e., that his unusual circumstances result in a sentence that is not "meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." *Id.* at 642 (quoting *State v. Boutte*, 10-928 (La.App. 3 Cir. 3/9/11), 58 So.3d 624, *writ denied*, 11-689 (La. 10/07/11), 71 So.3d 314). Further, where the sentence is mandatory, the trial court need not justify its sentence using the factors iterated in La.Code Crim.P. art. 894.1. *Id.*

Here, the defendant was sentenced to life imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence. Having offered no evidence that he is exceptional for the purposes of sentencing, we find no merit to his excessive sentence claim with regard to his conviction for second degree murder.

With regard to the conspiracy conviction, the sentencing provisions of La.R.S. 14:26 state:

> Whoever is a party to a criminal conspiracy to commit any crime shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; provided, however, whoever is a party to a criminal conspiracy to commit a crime punishable by death or life imprisonment shall be imprisoned at hard labor for not more than thirty years.

The appellate review of excessive sentence claims was discussed by a panel of this court in *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331. The panel stated that:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an

12

excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, an appellate court should take several factors into account when reviewing excessive sentence claims. A panel of this court addressed those factors in *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, stating:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

Because the second degree murder charge carries a mandatory life sentence, the maximum sentence for the defendant's conspiracy to commit second degree murder conviction was thirty years. *See* La.R.S. 14:26. The defendant was sentenced to twenty-five years at hard labor to be served consecutively to any other sentence.

The record reveals that the defendant's crimes were serious and violent. According to the testimony and evidence, the defendant, in concert with his accomplice, conspired to lure the victim to a remote location where the defendant shot the victim multiple times.

In addressing the circumstances of the offender, we observe that the trial court adequately considered the sentencing factors contained in La.Code Crim.P. art. 894.1. The trial court found that the defendant was twenty-five years old, had worked but was then unemployed, was not married and had no children, and was in the Marine Corps for a short period of time. The record indicates that the defendant was discharged from the Marine Corps for medical reasons. Further, although the defendant characterizes himself as "disabled," the trial court found that he was in excellent health. The trial court also noted that the defendant had no history of drug or alcohol abuse and had a prior misdemeanor conviction.

Finally, with regard to sentences in comparable cases, in *State v. Texada*, 99-1009 (La.App. 3 Cir. 2/2/00), 756 So.2d 463, *writ denied*, 00-2751 (La. 6/29/01), 794 So.2d 824, a panel of this court upheld a thirty-year sentence for conspiracy to commit first degree murder. We note that the defendant in that case was charged with multiple other felonies and had a prior criminal record. Additionally, the defendant in *Texada* ordered his associates to carry out the shooting that resulted in charges. *See also State v. Leger*, 04-1467 (La.App. 3 Cir. 6/1/05), 907 So.2d 739, *writ denied*, 05-2263 (La. 4/17/06), 926 So.2d 509, *cert. denied*, 549 U.S. 910, 127 S.Ct. 245 (2006). Here, although the defendant's criminal record was much less significant than the defendant in *Texada*'s, the record indicates that the defendant did more than direct his co-conspirators to carry out the murder and that he actually fired the shots.

14

Our review of the record indicates that the defendant's twenty-five year sentence neither shocks our sense of justice nor fails to make a meaningful contribution to acceptable penal goals. Accordingly, we conclude that the trial court did not abuse its discretion in imposing the defendant's sentence for conspiracy to commit second degree murder. The defendant's arguments regarding the excessiveness of his sentences are without merit.

*Jury Tampering Allegations*

In his pro se brief, the defendant contends that unknown persons spoke with members of the jury while his trial was in recess. The defendant speculates that these people were friends or members of the victim's family and that they improperly influenced the jury. The defendant also contends that the Vernon Parish Sheriff's deputy who was accompanying the jurors should have reported the improper contact to the trial court.

This issue was not presented to the trial court, and the appellate record contains no evidence concerning this alleged incident.[6] There is not sufficient evidence in the record for this court to address the defendant's claims. Thus, this issue would be more properly considered in an application for post-conviction relief where an evidentiary hearing can be conducted. *See State v. Stringer*, 06-800 (La.App. 3 Cir. 12/6/06), 949 So.2d 464, *writ denied*, 07-04 (La. 9/14/07), 963 So.2d 996.

---

[6] The defendant submitted an affidavit from James Bear concerning the alleged incident. However, we note that this affidavit was not submitted into the record, and the appellate court cannot review evidence that is not in the record on appeal or receive new evidence. *See Reese v. Dresser Valve Indus.*, 10-241 (La.App. 3 Cir. 10/6/10), 48 So.3d 406.

*Non-unanimous Jury Verdicts*

Finally, the defendant asserts that La.Code Crim.P. art. 782, which permits non-unanimous jury verdicts, is unconstitutional. The record indicates that the defendant filed a motion to this effect, which was denied by the trial court.

We observe that the Louisiana supreme court rejected this contention in *State v. Bertrand*, 08-2215, 08-2311 (La. 3/17/09), 6 So.3d 738. Therein, the Louisiana Supreme Court addressed the United States Supreme Court's holding in *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628 (1972), which found that non-unanimous jury verdicts were permissible in noncapital cases. Finding *Apodaca* to be "well-settled law[,]" the Louisiana supreme court reiterated that La.Code Crim.P. art. 782 withstands constitutional scrutiny. *Bertrand*, 6 So.3d at 742.

Applying the supreme court's holding in *Bertrand*, 6 So.3d 738, we find no error in the trial court's rejection of the defendant's motion in this regard. Additionally, we observe that the record indicates that the jury verdict in this matter was unanimous.[7]

Accordingly, we find no merit to the defendant's argument in this regard.

## DECREE

The convictions and sentences of the defendant, Justin Robert Sizemore, for one count of second degree murder and one count of conspiracy to commit second degree murder are affirmed.

**AFFIRMED.**

---

[7] We acknowledge that the jury verdict sheet has notations that may support a conclusion that the verdict was not unanimous. However, according to the trial transcript, the jurors, when polled, indicated that their verdict was unanimous.